IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PETROSKY and STEPHANIE PETROSKY, <br><br> Plaintiffs, <br><br> v. <br><br> ALLEGHENY COUNTY, ALLEGHENY COUNTY JAIL, ORLANDO HARPER, *Individually and in his capacity as Warden*, CORIZON HEALTH, INC. CORIZON, INC., SARAH A. PATTERSON, *as Administratrix of the* ESTATE OF MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, *CRNP* and DAVID DRUSKIN, *PA-C* <br><br> Defendants. | Civil Action No. 17-146 <br> Chief Magistrate Judge Maureen P. Kelly <br><br> Re: ECF No. 4 |

## OPINION

John and Stephanie Petrosky (collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 against Allegheny County, the Allegheny County Jail ("ACJ") and Orlando Harper ("Warden Harper") (collectively, "the County Defendants") as the result of serious injuries allegedly caused by their deliberate indifference to Mr. Petrosky's serious medical condition, endocarditis. Plaintiffs contend that the County Defendants violated constitutional provisions by not providing adequate medical care to Mr. Petrosky when he was a pretrial detainee at ACJ from March 6, 2014, to September 14, 2014. Plaintiffs also bring state law negligence claims against Corizon Health, Inc., Corizon Inc., Sarah A. Patterson, as administratrix of the Estate of Dr. Michael D. Patterson ("Dr. Patterson"), Danielle Litzinger, CRNP ("CRNP Litzinger"), and David Druskin, PA-C ("PA-C Druskin") (collectively, "the

Corizon Defendants"). Specifically, Plaintiffs allege that the Corizon Defendants provided negligent medical care to Mr. Petrosky while he was incarcerated in ACJ. Mrs. Petrosky also brings a loss of consortium claim against all Defendants.

Currently pending before the Court is the County Defendants' Rule 12(b)(6) Motion to Dismiss Counts I, V and XII. ECF No. 4. For the following reasons, the Motion to Dismiss will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

In the Complaint, Plaintiffs make the following detailed factual allegations. Mr. Petrosky, age 43, arrived at ACJ on March 6, 2014. ECF No. 1-2 ¶ 11. Upon arrival, he complained of chest pain at the infirmary. Id. The Corizon Defendants operated the ACJ's infirmary. Id. ¶¶ 11, 15. On March 7, 2014, the intake-and-receiving screening of Mr. Petrosky showed that his body temperature was 100.1 degrees Fahrenheit, his pulse was 111 beats per minute, and his blood pressure was 152/86. Id. ¶ 12. Repeated evaluations over the next two months showed Mr. Petrosky to be febrile, tachycardic and hypertensive. Id.

On May 15, 2014, a medical evaluation noted that Mr. Petrosky's body temperature was 102.2 degrees Fahrenheit and his pulse at 114 beats per minute. Id. ¶ 13. Despite these continued findings and a worsening physical condition, a complete physical assessment, evaluation, and work-up was not performed. Id.

During a June 27, 2014, medical examination, it was noted that Mr. Petrosky had lost twenty-nine pounds since his incarceration. Id. ¶ 14. On that date, his body temperature was 103.5 degrees Fahrenheit, his pulse was 140 beats per minute, and his blood pressure was 170/40. Id. Again, despite a worsening physical condition, a complete physical assessment, evaluation, and work-up was not completed. Id.

2

From June 27, 2014, to September 14, 2014, Corizon employees CRNP Litzinger and PA-C Druskin repeatedly evaluated Mr. Petrosky and entered numerous orders. Id. ¶ 15. However, they never ordered a complete physical assessment, evaluation, and work-up. Id.

At some point between the date of his incarceration at ACJ on March 6, 2014, and September 14, 2014, Mr. Petrosky lost the ability to walk. Id. ¶ 16. He also developed profuse night sweats. Id. He submitted numerous requests to the ACJ infirmary for medical assistance and evaluation that were ignored. Id.

On September 14, 2014, immediately upon transfer to the Westmoreland County Jail, Mr. Petrosky's serious medical condition was recognized. Id. ¶ 17. He was promptly transported to Westmoreland Regional Hospital. Id. He presented with tachycardia, shortness of breath and complaints of substernal chest pain. Id. He was found to be in congestive heart failure and blood cultures were positive for streptococci, gram negative. Id. A transesophageal echocardiogram showed multiple vegetations of the tricuspid valve with severe aortic insufficiency. Id. Vegetation of the mitral valve was also seen. Id.

Due to the seriousness of Mr. Petrosky's cardiac condition, he was transferred from Westmoreland Regional Hospital to Allegheny General Hospital ("AGH") where he was diagnosed with endocarditis, a life-threatening bacterial infection affecting his heart and its valves. Id. At AGH, Mr. Petrosky underwent aortic and mitral valve replacement surgery and repair of an aortic pseudoaneurysm. Id. ¶ 18.

In January of 2015, due to damage to his spleen caused by the delay in treatment, Mr. Petrosky had his spleen removed. Id. ¶ 19.

In May 2015, Mr. Petrosky's endocarditis recurred. Id. ¶ 20. He required a repeat sternotomy in which aortic and mitral valves were replaced with mechanical valves. Id. Further,

3

between his surgeries, Mr. Petrosky suffered profound respiratory failure which required extracorporeal membrane oxygenation, tube feeding and a tracheostomy. Id. As a result of these complications, Mr. Petrosky lost all of his toes. Id.

**B.     Procedural History**

Plaintiffs initiated this action by filing their Complaint in the Court of Common Pleas of Allegheny County on January 4, 2017. Id. at 1. Therein, Plaintiffs raised twelve counts: (1) Count I: Section 1983 claim against Allegheny County; (2) Count II: Negligence against Allegheny County; (3) Count III: Section 1983 claim against ACJ; (4) Count IV: Negligence against ACJ; (5) Count V: Section 1983 claim against Warden Harper; (6) Count VI: Negligence against Warden Harper; (7) Count VII: Negligence against Corizon Health, Inc.; (8) Count VIII: Negligence against Corizon, Inc.; (9) Count IX: Negligence against Sarah A. Patterson, as administratrix of the Estate of Dr. Patterson; (10) Count X: Negligence against CRNP Litzinger; (11) Count XI: Negligence against PA-C Druskin; and (12) Count XII: Loss of Consortium against all Defendants.

The County Defendants removed Plaintiffs' action to this Court on February 1, 2017. ECF No. 1. On February 6, 2017, the Corizon Defendants filed an Answer and Affirmative Defenses. ECF No. 3. On February 22, 2017, the County Defendants filed the instant Motion to Dismiss and Brief in Support. ECF Nos. 4, 5. On March 16, 2017, Plaintiffs filed a Brief in Opposition. ECF No. 11. Therein, Plaintiffs withdrew Count II, Count III, Count IV and Count VI. Id. at 2 n.1. On March 23, 2017, the County Defendants filed a Reply to Plaintiffs' Brief in Opposition. ECF No. 12. The County Defendants' Motion to Dismiss is now ripe for review. The remaining bases for the Motion to Dismiss relate only to Counts I, V and XII.

4

## II. STANDARD OF REVIEW

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

## III. DISCUSSION

### A. Count I: Section 1983 (Allegheny County)

At Count I of their Complaint, Plaintiffs allege violations by Allegheny County of Mr. Petrosky's rights under the Fourth, Eighth and Fourteenth Amendments (including claims under the Due Process and Equal Protection clauses). ECF No. 1-2 ¶¶ 21-31. However, a review of Plaintiffs' Brief in Opposition to the County Defendants' Motion to Dismiss indicates that, in Count I, they are pursuing a Section 1983 claim for deliberate indifference to Mr. Petrosky's

serious medical needs based solely on a violation of Eighth Amendment standards arising under the Fourteenth Amendment.[1] ECF No. 11 at 4-10.

In order to succeed on a Section 1983 claim, a claimant must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Prisoners have a constitutional right to receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A prisoner can establish a violation of his Fourteenth Amendment right to adequate medical care by showing (1) a serious medical need and (2) prison officials' acts or omissions indicating deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a prisoner's medical needs includes "where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)), and when medical care is intentionally not provided even when the need for it is known. Id. (citing Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985)).

The County Defendants argue that Allegheny County cannot be held liable on this claim because Plaintiffs have failed to allege a policy or custom which rendered Allegheny County deliberately indifferent to Mr. Petrosky's serious medical needs. ECF No. 5 at 12-16.

Indeed, a municipality may not be held liable under 42 U.S.C. § 1983 based on a *respondeat superior* theory or merely because its employees may have acted unconstitutionally.

---

[1] Mr. Petrosky was a pretrial detainee at ACJ. ECF No. 11 4 n.2. "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (internal citation omitted). The United States Court of Appeals for the Third Circuit applies the same standard to claims for inadequate prison medical care brought under the Eighth and Fourteenth Amendments. Id. at 582.

Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, a municipality may only be liable for its own illegal acts or if a plaintiff identifies a municipal "policy" or "custom" that caused a constitutional violation. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Such policies or customs arise in the following ways:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, No. 01-3449, 2003 U.S. App. LEXIS 2152 (3d Cir. 2003) (citations and quotation marks omitted).

In opposing the Motion to Dismiss as to Count I, citing Mr. Petrosky's "rapid" weight loss, "eventual" inability to walk and repeated requests for medical care, Plaintiffs argue that they "should be given the opportunity to prove that Allegheny County allowed a policy to exist where medical care of such obviously ill patients was not reviewed, and requests for care not addressed." ECF No. 11 at 16. However, even assuming the truth of the allegations in Plaintiffs' Complaint, nothing alleged by Plaintiffs in Count I asserts that a specific policy existed.

Thus, at this juncture, Plaintiffs lack sufficient well-pleaded allegations to establish a plausible claim that Allegheny County policymakers were deliberately indifferent to Mr. Petrosky's medical needs or that a policy or custom existed that deprived Mr. Petrosky of his constitutional rights. However, when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint unless it would be

7

inequitable or futile to do so. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Therefore, Count I will be dismissed without prejudice to Plaintiffs' ability to file an Amended Complaint specifically identifying the policies and/or customs upon which Plaintiffs base their deliberate indifference claim and curing the defects identified herein.

## B.     Count V: Section 1983 (Warden Harper)

At Count V, Plaintiffs allege a Section 1983 claim of deliberate indifference against Warden Harper.[2] ECF No. 1-2 ¶¶ 59-69. As in Count I, a review of Plaintiffs' Brief in Opposition to the County Defendants' Motion to Dismiss indicates that, in Count V, they are pursuing a Section 1983 claim of supervisor liability on the part of Warden Harper for deliberate indifference to Mr. Petrosky's serious medical needs based solely on a violation of Eighth Amendment standards arising under the Fourteenth Amendment. ECF No. 11 at 11-14.

Under Section 1983, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted), rev'd sub nom on other grounds by Taylor v. Barkes, 135 S. Ct. 2042 (2015). A supervisor may also be liable if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Id. (citations and quotation marks omitted).

Plaintiffs assert that Warden Harper is liable because he "was deliberately indifferent to whether the medical needs of Petrosky, or other obviously ill inmates, were being addressed by

---

[2] To the extent that Plaintiffs bring claims against Warden Harper in his official capacity, they are dismissed with prejudice as duplicative those against Allegheny County. See Hart v. W. Mifflin Area Sch. Dist., No. 16-1066, 2016 U.S. Dist. LEXIS 169473, at * 13 (W.D. Pa. Dec. 8, 2016).

8

the medical provider." ECF No. 11 at 14. However, Plaintiffs' allegations are not sufficient for the Court to infer that Warden Harper was deliberately indifferent to any medical needs. Plaintiffs' allegations do not indicate that Warden Harper had any knowledge of Mr. Petrosky's medical issues, nor do Plaintiffs allege any policies, customs or subordinate conduct that Warden Harper knew about, authorized or acquiesced to that caused a constitutional injury to Mr. Petrosky. Thus, the Court will dismiss Count V without prejudice to Plaintiffs' ability to file an Amended Complaint curing the defects identified herein.

### C. Count XII: Loss of Consortium (Allegheny County, Warden Harper and ACJ)

In Count XII, Mrs. Petrosky asserts a loss of consortium claim against all of the Defendants. As to the Motion to Dismiss relative to the County Defendants, Mrs. Petrosky's claim in Count XII for loss of consortium due to County Defendants' alleged violation of her husband's federal civil rights is precluded as a matter of law.

As a preliminary matter, loss of consortium is a derivative claim that is wholly dependent on the success of the underlying claim. Newlon v. Davis, No. 13-1213, 2014 U.S. Dist. LEXIS 71941, at *15 (W.D. Pa. May 27, 2014). Because, at this point, the underlying claims against County Defendants are not viable, neither is this derivative claim.

However, even if Plaintiffs had stated or can state in an amended Complaint plausible Section 1983 claims, Mrs. Petrosky would be precluded from recovering damages for loss of consortium related thereto. As this Court has explained, "there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights . . .. In particular, there is no authority to consider a loss of consortium claim deriving from a claim of injury by an injured spouse brought pursuant to 42 U.S.C. § 1983." Newlon, 2014 U.S. Dist. LEXIS 71941, at *16-17 (citation and quotation marks omitted). Therefore, the Court will

dismiss with prejudice Count XII against the County Defendants. Permitting amendment of the Complaint as to this claim would be futile. As Count XII is the sole claim remaining against ACJ, ACJ will be dismissed from the case.

## V. **CONCLUSION**

For the foregoing reasons, the County Defendants' Motion to Dismiss, ECF No. 4, will be granted.

### **ORDER**

AND NOW, this 10th day of May, 2017, IT IS HEREBY ORDERED that the County Defendants' Motion to Dismiss, ECF No. 4, is GRANTED as to Count I and Count V without prejudice to Plaintiffs' ability to file, on or before June 9, 2017, an Amended Complaint curing the defects identified herein.

IT IS FURTHERED ORDERED that the Motion to Dismiss, ECF No. 4, is GRANTED with prejudice as to Count XII against Allegheny County, Allegheny County Jail and Orlando Harper and as to all claims brought against Orlando Harper in his official capacity.

IT IS FURTHER ORDERED that Allegheny County Jail is dismissed from the case.

BY THE COURT:

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF