**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN PETROSKY and STEPHANIE
PETROSKY,

                    Plaintiffs,

-v-

ALLEGHENY COUNTY; ORLANDO
HARPER, Individually;  CORIZON
HEALTH, INC.; CORIZON, INC.;
SARAH A. PATTERSON, as
Administratrix of the ESTATE OF
MICHAEL D. PATTERSON, SR.,
M.D.; DANIELLE LITZINGER,
CRNP; and DAVID DRUSKIN, PA-C,

                    Defendants.

No.:  17-cv-146 MPK

**FIRST AMENDED COMPLAINT IN**
**CIVIL ACTION AND CERTIFICATES**
**OF MERIT TO COMPLAINT**

Filed on Behalf of PLAINTIFFS

Counsel of Record for this Party:

Michael A. Murphy, Esquire
PA. I.D. # 55846
John D. Perkosky, Esquire
PA. I.D. # 83083
Benjamin J. Gobel, Esquire
PA. I.D. # 309670

Ogg, Murphy & Perkosky, P.C.
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
412-471-8500
Firm I.D. # 568

**JURY TRIAL DEMANDED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN PETROSKY and STEPHANIE    :    No.: 17-cv-146 MPK
PETROSKY,                              :
                                         :
            Plaintiffs,           :
                                         :
-v-                                            :
                                           :
ALLEGHENY COUNTY; et al,        :
                                           :
           Defendants.          :

**FIRST AMENDED COMPLAINT IN CIVIL ACTION**

AND NOW, come Plaintiffs, John Petrosky and Stephanie Petrosky, by and through her

counsel, Michael A. Murphy, Esquire, John D. Perkosky, Esquire, Benjamin J. Gobel, Esquire,

and the law firm Ogg, Murphy & Perkosky, P.C., and files this First Amended Complaint in Civil

Action, averring as follows:

**PLAINTIFFS**

1.      At all times relevant to this action, JOHN PETROSKY (hereinafter "MR.

PETROSKY" and/or "Plaintiff-husband" and/or "Plaintiff") is an adult individual residing at 409

Perry Avenue, Belle Vernon, Fayette County, Pennsylvania 15012.

2.      At all times relevant to this action, STEPHANIE PETROSKY (hereinafter "MRS.

PETROSKY" and/or "Plaintiff-wife") is an adult individual residing at 409 Perry Avenue, Belle

Vernon, Fayette County, Pennsylvania 15012.

**DEFENDANTS**

3.      ALLEGHENY COUNTY (hereinafter "COUNTY") is a governmental entity

located in the Commonwealth of Pennsylvania.  COUNTY has a principle place of business at 436

Grant Street, Pittsburgh, Allegheny County, Pennsylvania 15219.

4.      ORLANDO HARPER, Individually (hereinafter "WARDEN HARPER") was, at all relevant times, Warden of the Allegheny County Jail ("ACJ"), maintaining a business address of 950 Second Avenue, Pittsburgh, Allegheny County, Pennsylvania 15219.

5.      CORIZON HEALTH, INC. (hereinafter "CORIZON HEALTH") is a foreign business entity with an address of 105 West Park Drive, Brentwood, Tennessee 37027-5319.  This Court has personal jurisdiction over CORIZON HEALTH by virtue of its presence and activities in conducting regular business within the Commonwealth of Pennsylvania at ACJ, and by virtue of its conduct within the meaning of 42 Pa. C.S.A. §§ 5301(a) and 5322(b).  CORIZON HEALTH was engaged in the business of offering healthcare and medical offices at ACJ.

At all times relevant to the matters set forth herein, CORIZON HEALTH employed MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, CRNP and DAVID DRUSKIN, PA-C.

At all times relevant to the matters set forth herein, CORIZON HEALTH, was acting through its agents, ostensible agents, servants and/or employees, namely the physicians, physicians' assistants, certified registered nurse practitioners, nurses, nurses' assistants, and technicians, who were acting within the course of their employment and the scope of their authority, including but not limited to MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, CRNP and DAVID DRUSKIN, PA-C.

6.      CORIZON, INC. (hereinafter "CORIZON INC") is a foreign business entity with an address of 105 West Park Drive, Brentwood, Tennessee 37027-5319.  This Court has personal jurisdiction over CORIZON INC by virtue of its presence and activities in conducting regular business within the Commonwealth of Pennsylvania at ACJ, and by virtue of its conduct within

the meaning of 42 Pa. C.S.A. §§ 5301(a) and 5322(b).  CORIZON, INC was engaged in the business of offering healthcare and medical offices at ACJ.

At all times relevant to the matters set forth herein, CORIZON INC employed MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, CRNP and DAVID DRUSKIN, PA-C.

At all times relevant to the matters set forth herein, CORIZON INC, was acting through its agents, ostensible agents, servants and/or employees, namely the physicians, physicians' assistants, certified registered nurse practitioners, nurses, nurses' assistants, and technicians, who were acting within the course of their employment and the scope of their authority, including but not limited to MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, CRNP and DAVID DRUSKIN, PA-C.

7.     SARAH A. PATTERSON, as Administratrix of the ESTATE OF MICHAEL D. PATTERSON, SR., M.D. (hereinafter "PERSONAL REPRESENTATIVE"), is the personal representative of the ESTATE OF MICHAEL D. PATTERSON, SR., M.D. (hereinafter "DR. PATTERSON"), as appointed by the Allegheny County Register of Wills at No. 02-1501327, on May 4, 2015.  Prior to his death on November 26, 2014, DR. PATTERSON was, at all relevant times, a physician licensed to practice medicine in the Commonwealth of Pennsylvania, and was engaged in providing medical care on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.  PLAINTIFFS are asserting a professional liability claim against this Defendant.

At all times relevant to the matters set forth herein, DR. PATTERSON was employed by and acting on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.

At all times relevant to the matters set forth herein, DR. PATTERSON was acting through his agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses,

nurses' assistants, and technicians, who were acting within the course of their employment and the scope of their authority.

8.     DANIELLE LITZINGER, CRNP (hereinafter "CRNP LITZINGER") was, at all relevant times, a certified registered nurse practitioner licensed to practice medicine in the Commonwealth of Pennsylvania, and was engaged in providing medical care on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.  PLAINTIFFS are asserting a professional liability claim against this Defendant.

At all times relevant to the matters set forth herein, CRNP LITZINGER was employed by and acting on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.

At all times relevant to the matters set forth herein, CRNP LITZINGER was acting through her agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and technicians, who were acting within the course of their employment and the scope of their authority.

9.     DAVID DRUSKIN, PA-C (hereinafter "PA DRUSKIN") was, at all relevant times, a physician's assistant licensed to practice medicine in the Commonwealth of Pennsylvania, and was engaged in providing medical care on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.  PLAINTIFFS are asserting a professional liability claim against this Defendant.

At all times relevant to the matters set forth herein, PA DRUSKIN was employed by and acting on behalf of Defendants COUNTY, CORIZON HEALTH and CORIZON INC.

At all times relevant to the matters set forth herein, PA DRUSKIN was acting through his agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses'

assistants, and technicians, who were acting within the course of their employment and the scope of their authority.

## FACTUAL BACKGROUND

10.     On March 6, 2014, MR. PETROSKY, age forty-three (43), became an inmate at ACJ.  On the same day, MR. PETROSKY presented to ACJ's infirmary, which was operated and staffed by CORIZON HEALTH and CORIZON INC.  DR. PATTERSON served as a site medical officer and physician responsible for the medical care provided to inmates at ACJ.  Upon presentation, MR. PETROSKY complained of chest pain.

11.     On March 7, 2014, MR. PETROSKY's intake and receiving screening was completed.  It found his temperature to be 100.1 degrees Fahrenheit (100.1 °F), his pulse to be 111 beats per minute, and a blood pressure of 152/86.  Over the next two (2) months, MR. PETROSKY was repeatedly evaluated and was found to be febrile, tachycardic, and hypertensive.

12.     On May 15, 2014, MR. PETROSKY was again evaluated by Defendants.  His temperature was found to be 102.2 degrees Fahrenheit (102.2 °F), with a pulse of 114 beats per minute.  Despite these findings and MR. PETROSKY's clearly worsening condition, a complete physical assessment, evaluation, and work-up was not performed.

13.     By June 27, 2014, MR. PETROSKY was noted by Defendants to have lost twenty-nine pounds (29 lbs.) since being incarcerated.  Additionally, on that date, MR. PETROSKY's temperature was 103.5 degrees Fahrenheit (103.5 °F), his pulse was 140 beats per minute, and his blood pressure was 170/40.  Again, despite these concerning findings and the amount of time that MR. PETROSKY had now been febrile, tachycardic, and hypertensive, a complete physical assessment, evaluation, and work-up was not completed.

14.     Between June 27, 2014 and September 14, 2014, while MR. PETROSKY remained an inmate, he was repeatedly evaluated and numerous orders were entered by CRNP LITZINGER and PA DRUSKIN, however, a complete physical assessment, evaluation, and work-up was never completed, despite his symptoms and deteriorating condition.

15.     Between his date of incarceration and September 14, 2014, MR. PETROSKY, without having suffered any physical trauma, lost the ability to walk.  In addition, he developed profuse sweating at night.  During this same time, in addition to the aforementioned examinations, MR. PETROSKY submitted numerous requests to the infirmary for medical assistance and evaluation that were ignored.

16.     On September 14, 2014, immediately after being transferred to the Westmoreland County Jail, the seriousness of MR. PETROSKY's condition was finally recognized and he was transported to Westmoreland Hospital for evaluation.  He presented with tachycardia, shortness of breath, and complaints of substernal chest pain.  He was found to be in congestive heart failure and blood cultures were positive for streptococci, gram negative.   A transesophageal echocardiogram showed multiple vegetations of the tricuspid valve with severe aortic insufficiency.  Vegetation of the mitral valve was also seen.  Due to the seriousness of his cardiac condition, MR. PETROSKY was transferred to Allegheny General Hospital and diagnosed with endocarditis, a life-threatening bacterial infection affecting his heart and its valves.

17.     At Allegheny General Hospital, MR. PETROSKY underwent aortic and mitral valve replacement surgery and repair of an aortic pseudoaneurysm.

18.     In January 2015, due to damage to his spleen that had been caused by the aforementioned delays in treatment, MR. PETROSKY required a splenectomy.

19.     In May 2015, MR. PETROSKY suffered a recurrence of endocarditis, which required a repeat sternotomy with replacement of the aortic and mitral valves with mechanical valves.  Intraoperatively, MR. PETROSKY experienced profound respiratory failure and required extracorporeal membrane oxygenation, tube feeding, and a tracheostomy.  These complications resulted in the loss of all of his toes.

**COUNT I – 42 U.S.C. § 1983**
**PLAINTIFFS**
**-v-**
**ALLEGHENY COUNTY**

20.     Plaintiffs incorporate Paragraphs 1 through 19 as if fully set forth herein.

21.     At all times COUNTY had assumed custody and control over MR. PETROSKY by detaining him as an inmate.  As COUNTY assumed custody and control over MR. PETROSKY, Defendant had a duty to protect him from bodily injury and death.

22.     COUNTY's actions, individually and/or jointly, created a situation, a state-created danger, where it was foreseeable that MR. PETROSKY would suffer injury and harm.

23.     The actions of COUNTY were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference to MR. PETROSKY's personal safety, medical condition, well-being and right to life in derogation of the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution.

24.     COUNTY's actions also amounted to cruel and unusual punishment to MR. PETROSKY in derogation of the Eighth Amendment of the United States Constitution.

25.     The relationship between COUNTY and MR. PETROSKY was such that COUNTY had direct knowledge of the likelihood that MR. PETROSKY would suffer the harm he did.

26.     COUNTY's conduct, its position and authority as a state actor facilitated, enabled and created a dangerous situation and made MR. PETROSKY particularly vulnerable to harm.

27.     COUNTY, acting through its policymakers and decision makers, and through its deliberate and conscious indifference and utter disregard for the training and monitoring of its agents and employees:

a.   Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees, including those who had sustained rapid weight loss and/or could not walk, received adequate and necessary medical care;

b.   Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees, including those who had sustained rapid weight loss and/or could not walk, received timely and appropriate medical care;

c.   Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees who made repeated requests for medical care, had their requests for care adequately addressed by its agents and employees;

d.   Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees who made repeated requests for medical care, had their requests for care addressed by its agents and employees in a timely manner;

e.   Fostered and created a policy, custom and/or practice of not sending seriously ill inmates / detainees, including those who had sustained rapid weight loss, or could not walk, and/or had made repeated requests for medical care, such as MR. PETROSKY, to outside medical facilities for evaluation and treatment;

f.   Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular, were ignored and/or inadequately considered when determining the inmate's / detainee's placement at ACJ;

g.   Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular,

were ignored and/or inadequately considered when determining the times at which and the manner in which the inmate / detainee would have access to proper medical care while at ACJ; and

h.     Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular, were ignored and/or inadequately considered when determining whether the inmate / detainee should be transferred to an outside medical facility for evaluation and treatment.

28.    As a direct and proximate result of willful disregard, intentional, grossly reckless and deliberately indifferent actions and/or failure to act of COUNTY, MR. PETROSKY was deprived of his right to adequate medical care, life, and liberty without Due Process and in violation of his Equal Protection rights as guaranteed by the Fourteenth and as well as rights guaranteed by the Eighth Amendment of the United States Constitution, and sustained the harm outlined herein.

WHEREFORE, Plaintiffs, JOHN PETROSKY and STEPHANIE PETROSKY, demand judgment against ALLEGHENY COUNTY for all available damages, including punitive damages, in addition to attorney fees and costs pursuant to 42 U.S.C. §1988.

**COUNT II – 42 U.S.C. § 1983**
**PLAINTIFFS**
**-v-**
**ORLANDO HARPER, Individually**

29.    Plaintiffs incorporate Paragraphs 1 through 28 as if fully set forth herein.

30.    At all times WARDEN HARPER had assumed custody and control over MR. PETROSKY by detaining him as an inmate.  As WARDEN HARPER assumed custody and control over MR. PETROSKY, Defendant had a duty to protect him from bodily injury and death.

31.    As previously set forth, WARDEN HARPER's actions, individually and/or jointly, created a situation, a state-created danger, where it was foreseeable that MR. PETROSKY would suffer injury and harm.  Through his rapid weight loss while at ACJ, his development of an

inability to walk and repeatedly requests for care, WARDEN HARPER knew that Mr. Petrosky was seriously ill, in need of medical attention, and that his constitutional rights to adequate medical care were being violated.

32.     The actions of WARDEN HARPER were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference to MR. PETROSKY's personal safety, well-being and right to life in derogation of the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution.

33.     WARDEN HARPER's actions also amounted to cruel and unusual punishment to MR. PETROSKY in derogation of the Eighth Amendment of the United States Constitution.

34.     The relationship between WARDEN HARPER and MR. PETROSKY was such that WARDEN HARPER had direct knowledge of the likelihood that MR. PETROSKY would suffer the harm he did.

35.     WARDEN HARPER's conduct, his position and authority as a state actor facilitated, enabled and created a dangerous situation and made MR. PETROSKY particularly vulnerable to harm.

36.     WARDEN HARPER further, as a policymaker and decision maker of COUNTY, through his deliberate and conscious indifference and utter disregard for the training and monitoring of his agents and employees:

      a.    Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees, including those who had sustained rapid weight loss and/or could not walk, received adequate and necessary medical care;

      b.    Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees, including those who had sustained rapid weight loss and/or could not walk, received timely and appropriate medical care;

c.     Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees who made repeated requests for medical care, had their requests for care adequately addressed by his agents and employees;

d.     Fostered and created a policy, custom and/or practice of failing to act to ensure that obviously ill inmates / detainees who made repeated requests for medical care, had their requests for care addressed by his agents and employees in a timely manner;

e.     Fostered and created a policy, custom and/or practice of not sending seriously ill inmates / detainees, including those who had sustained rapid weight loss, or could not walk, and/or had made repeated requests for medical care, such as MR. PETROSKY, to outside medical facilities for evaluation and treatment;

f.     Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular, were ignored and/or inadequately considered when determining the inmate's / detainee's placement at ACJ;

g.     Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular, were ignored and/or inadequately considered when determining the times at which and the manner in which the inmate / detainee would have access to proper medical care while at ACJ; and

h.     Fostered and created a policy, custom and/or practice where an inmate's / detainee's requests for medical care, and MR. PETROSKY's in particular, were ignored and/or inadequately considered when determining whether the inmate / detainee should be transferred to an outside medical facility for evaluation and treatment.

37.     As a direct and proximate result of willful disregard, intentional, grossly reckless and deliberately indifferent actions and/or failure to act of WARDEN HARPER, MR. PETROSKY was deprived of his right to adequate medical care, life, and liberty without Due Process and in violation of his Equal Protection rights as guaranteed by the Fourteenth and as well as rights

guaranteed by the Eighth Amendment of the United States Constitution, and sustained the harm outlined herein.

WHEREFORE, Plaintiffs, JOHN PETROSKY and STEPHANIE PETROSKY, demand judgment against ORLANDO HARPER for all available damages, including punitive damages, in addition to attorney fees and costs pursuant to 42 U.S.C. §1988.

### COUNT III– NEGLIGENCE
### PLAINTIFFS
### -v-
### CORIZON HEALTH, INC.

38.     Plaintiffs incorporate Paragraphs 1 through 37 as if fully set forth herein.

39.     CORIZON HEALTH had a duty and responsibility to MR. PETROSKY to provide appropriate and competent medical care and treatment, to establish policies and procedures for health care, to employ, select, retain, and/or hire competent medical personnel and had a duty to oversee, supervise and coordinate the efforts of all persons rendering medical care and treatment within its facility.

40.     The physical structure, atmosphere and appearance of CORIZON HEALTH, the allowed use of its facility, the conduct of the physicians, nursing staff, technicians, and all other health care personnel and various other factors combined to create the appearance that those individuals rendering care to MR. PETROSKY were agents, ostensible agents, servants and/or employees of CORIZON HEALTH.

41.     At all relevant times, DR. PATTERSON, CRNP LITZINGER, and PA DRUSKIN, were employees, agents and/or servants of CORIZON HEALTH, and under the control of CORIZON HEALTH.

42.     CORIZON HEALTH, directly, and through its officers, directors, as well as through its agents, ostensible agents, servants, and/or employees, namely the physicians,

physicians' assistants, nurses, nurses' assistants, and technicians, who were involved in the medical treatment described herein, including but not limited to DR. PATTERSON, CRNP LITZINGER, and PA DRUSKIN, was negligent and careless in some or all of the following particulars:

a. In failing to properly respond to MR. PETROSKY's tachycardia, hypertension, fevers, and/or weight loss;

b. In failing to recognize and/or be familiar with the signs and symptoms of endocarditis;

c. In failing to transfer or send MR. PETROSKY to a medical facility for evaluation and treatment;

d. In failing to properly manage MR. PETROSKY's infectious condition;

e. In failing to properly treat MR. PETROSKY's endocarditis;

f. In failing to properly diagnose MR. PETROSKY's endocarditis;

g. In failing to properly treat MR. PETROSKY's cardiac condition;

h. In failing to properly diagnose MR. PETROSKY's cardiac condition;

i. In failing to recognize that MR. PETROSKY was suffering from endocarditis;

j. In failing to recognize the severity of MR. PETROSKY's endocarditis;

k. In failing to recognize the severity of MR. PETROSKY's cardiac condition;

l. In failing to recognize the severity of MR. PETROSKY's symptoms;

m. In failing to conduct a complete cardiac workup on MR. PETROSKY;

n. In delaying in conducting a complete cardiac workup on MR. PETROSKY;

o. In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk of developing endocarditis and/or infection;

p. In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk for cardiac deterioration;

q. In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of further cardiac deterioration;

r.  In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of becoming septic;

s.  In failing to properly evaluate the likelihood that MR. PETROSKY's endocarditis would continue to worsen;

t.  In failing to properly evaluate the likelihood that MR. PETROSKY's cardiac condition would continue to worsen;

u.  In failing to order, schedule, and/or perform appropriate diagnostic tests;

v.  In failing to order, schedule, and/or perform appropriate laboratory tests;

w.  In failing to timely and properly perform diagnostic tests to diagnose MR. PETROSKY's condition;

x.  In failing to properly review and interpret the results of MR. PETROSKY's diagnostic tests;

y.  In failing to timely and adequately diagnose MR. PETROSKY's endocarditis;

z.  In failing to timely and properly evaluate MR. PETROSKY's infectious condition;

aa. In failing to timely and adequately respond to MR. PETROSKY's deteriorating condition;

bb. In delaying in treating MR. PETROSKY's cardiac condition;

cc. In failing to properly and timely prescribe and administer antibiotics, or other medications, to treat MR. PETROSKY's condition;

dd. In failing to oversee all persons who practice medicine within ACJ and care for patients with endocarditis;

ee. In failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for inmates with infectious conditions;

ff. In failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for inmates with endocarditis;

gg. In failing to formulate, adopt, and enforce adequate rules, policies, and procedures to respond to inmates', and MR. PETROSKY's in particular, requests for medical evaluation and treatment;

hh. In failing to select and retain competent and qualified physicians and to have them on duty during MR. PETROSKY's care and treatment at ACJ related to his infectious condition;

  ii.  In failing to ensure that sufficient personnel with appropriate qualifications were available within the ACJ to manage MR. PETROSKY's cardiac condition, as well as the attendant risks of same; and

  jj.  In failing to oversee all persons who practice medicine within ACJ and care for inmates with acute cardiac conditions.

43.  As a direct and proximate result of the above actions and omissions of CORIZON HEALTH, MR. PETROSKY's condition went undiagnosed and untreated, resulting in permanent injury and damage.

44.  As a direct and proximate result of the negligent acts or omissions of CORIZON HEALTH, as alleged above, MR. PETROSKY sustained injuries, including but not limited to the following:

  a.  Severe injury to his heart;

  b.  Loss of his toes;

  c.  Loss of his spleen;

  d.  Severe pain and discomfort in the chest;

  e.  Suppressed cardiac function;

  f.  Severe emotional distress and shock to his nerves and nervous system; and

  g.  Some or all of the above injuries may be permanent in nature.

45.  As a result of his injuries, MR. PETROSKY has suffered and will continue to suffer some or all of the following damages:

  a.  Medical expenses for services and supplies incident to the treatment of his injuries;

  b.  Disfigurement;

  c.  Medical expenses for hospital admissions, surgeries, treatment and therapies, both past and future;

  d.  Impairment of his general health, strength, and vitality;

  e.  Past and future pain and suffering;

f.      Past and future anguish, embarrassment, and inconvenience;

g.      Deprivation of his ability to enjoy ordinary pleasures of life;

h.      Increased risk of complications and corrective procedures;

i.      Loss of past and future earnings and earning power; and

j.      Other losses and damages recoverable by law.

WHEREFORE, Plaintiffs, JOHN PETROSKY AND STEPHANIE PETROSKY, claim

damages against CORIZON HEALTH, INC. in a sum in excess of the applicable arbitration limits

and demands a trial by jury.

## COUNT IV – NEGLIGENCE
## PLAINTIFFS
## -v-
## CORIZON, INC.

46.     Plaintiffs incorporate Paragraphs 1 through 45 as if fully set forth herein.

47.     CORIZON INC had a duty and responsibility to MR. PETROSKY to provide

appropriate and competent medical care and treatment, to establish policies and procedures for

health care, to employ, select, retain, and/or hire competent medical personnel and had a duty to

oversee, supervise and coordinate the efforts of all persons rendering medical care and treatment

within its facility.

48.     The physical structure, atmosphere and appearance of CORIZON INC, the allowed

use of its facility, the conduct of the physicians, nursing staff, technicians, and all other health care

personnel and various other factors combined to create the appearance that those individuals

rendering care to MR. PETROSKY were agents, ostensible agents, servants and/or employees of

CORIZON INC.

49.     At all relevant times, DR. PATTERSON, CRNP LITZINGER, and PA DRUSKIN, were employees, agents and/or servants of CORIZON INC, and under the control of CORIZON INC.

50.     CORIZON INC, directly, and through its officers, directors, as well as through its agents, ostensible agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and technicians, who were involved in the medical treatment described herein, including but not limited to DR. PATTERSON, CRNP LITZINGER, and PA DRUSKIN, was negligent and careless in some or all of the following particulars:

a.      In failing to properly respond to MR. PETROSKY's tachycardia, hypertension, fevers, and/or weight loss;

b.      In failing to recognize and/or be familiar with the signs and symptoms of endocarditis;

c.      In failing to transfer or send MR. PETROSKY to a medical facility for evaluation and treatment;

d.      In failing to properly manage MR. PETROSKY's infectious condition;

e.      In failing to properly treat MR. PETROSKY's endocarditis;

f.      In failing to properly diagnose MR. PETROSKY's endocarditis;

g.      In failing to properly treat MR. PETROSKY's cardiac condition;

h.      In failing to properly diagnose MR. PETROSKY's cardiac condition;

i.      In failing to recognize that MR. PETROSKY was suffering from endocarditis;

j.      In failing to recognize the severity of MR. PETROSKY's endocarditis;

k.      In failing to recognize the severity of MR. PETROSKY's cardiac condition;

l.      In failing to recognize the severity of MR. PETROSKY's symptoms;

m.      In failing to conduct a complete cardiac workup on MR. PETROSKY;

n.      In delaying in conducting a complete cardiac workup on MR. PETROSKY;

o.  In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk of developing endocarditis and/or infection;

p.  In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk for cardiac deterioration;

q.  In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of further cardiac deterioration;

r.  In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of becoming septic;

s.  In failing to properly evaluate the likelihood that MR. PETROSKY's endocarditis would continue to worsen;

t.  In failing to properly evaluate the likelihood that MR. PETROSKY's cardiac condition would continue to worsen;

u.  In failing to order, schedule, and/or perform appropriate diagnostic tests;

v.  In failing to order, schedule, and/or perform appropriate laboratory tests;

w.  In failing to timely and properly perform diagnostic tests to diagnose MR. PETROSKY's condition;

x.  In failing to properly review and interpret the results of MR. PETROSKY's diagnostic tests;

y.  In failing to timely and adequately diagnose MR. PETROSKY's endocarditis;

z.  In failing to timely and properly evaluate MR. PETROSKY's infectious condition;

aa.  In failing to timely and adequately respond to MR. PETROSKY's deteriorating condition;

bb.  In delaying in treating MR. PETROSKY's cardiac condition;

cc.  In failing to properly and timely prescribe and administer antibiotics, or other medications, to treat MR. PETROSKY's condition;

dd.  In failing to oversee all persons who practice medicine within ACJ and care for patients with endocarditis;

ee.  In failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for inmates with infectious conditions;

ff.   In failing to formulate, adopt, and enforce adequate rules and policies to ensure quality care for inmates with endocarditis;

gg.   In failing to formulate, adopt, and enforce adequate rules, policies, and procedures to respond to inmates', and MR. PETROSKY's in particular, requests for medical evaluation and treatment;

hh.   In failing to select and retain competent and qualified physicians and to have them on duty during MR. PETROSKY's care and treatment at ACJ related to his infectious condition;

ii.   In failing to ensure that sufficient personnel with appropriate qualifications were available within the ACJ to manage MR. PETROSKY's cardiac condition, as well as the attendant risks of same; and

jj.   In failing to oversee all persons who practice medicine within ACJ and care for inmates with acute cardiac conditions.

51.   As a direct and proximate result of the above actions and omissions of CORIZON INC, MR. PETROSKY's condition went undiagnosed and untreated, resulting in permanent injury and damage.

52.   As a direct and proximate result of the negligent acts or omissions of CORIZON INC, as alleged above, MR. PETROSKY sustained the following injuries set forth in Paragraph 44, which paragraph is incorporated by reference.

53.   As a result of his injuries, MR. PETROSKY has suffered and will continue to suffer some or all of the damages set forth in Paragraph 45, which paragraph is incorporated by reference.

WHEREFORE, Plaintiffs, JOHN PETROSKY AND STEPHANIE PETROSKY, claim damages against CORIZON, INC. in a sum in excess of the applicable arbitration limits and demands a trial by jury.

**COUNT V – NEGLIGENCE**
**PLAINTIFFS**
**-v-**
**SARAH A. PATTERSON, as Administratrix of the**
**ESTATE OF MICHAEL D. PATTERSON, SR., M.D.**

54.     Plaintiffs incorporate Paragraphs 1 through 53 as if fully set forth herein.

55.     At all times material hereto, DR. PATTERSON owed a duty to MR. PETROSKY
to exercise the skill and care of a reasonable physician.

56.     DR. PATTERSON had a duty and responsibility to MR. PETROSKY to furnish
appropriate and competent medical services.

57.     DR. PATTERSON failed to exercise or possess that degree of skill, care and
education ordinarily exercised or possessed by a physician trained, educated and licensed in
medical services.

58.     DR. PATTERSON, individually and through his agents, servants, and/or
employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and
technicians, who were involved in the medical treatment described herein, was negligent and
careless in some or all of the following particulars:

      a.     In failing to properly respond to MR. PETROSKY's tachycardia,
hypertension, fevers, and/or weight loss;

      b.     In failing to recognize and/or be familiar with the signs and symptoms of
endocarditis;

      c.     In failing to transfer or send MR. PETROSKY to a medical facility for
evaluation and treatment;

      d.     In failing to properly manage MR. PETROSKY's infectious condition;

      e.     In failing to properly treat MR. PETROSKY's endocarditis;

      f.     In failing to properly diagnose MR. PETROSKY's endocarditis;

      g.     In failing to properly treat MR. PETROSKY's cardiac condition;

h.      In failing to properly diagnose MR. PETROSKY's cardiac condition;

i.      In failing to recognize that MR. PETROSKY was suffering from endocarditis;

j.      In failing to recognize the severity of MR. PETROSKY's endocarditis;

k.      In failing to recognize the severity of MR. PETROSKY's cardiac condition;

l.      In failing to recognize the severity of MR. PETROSKY's symptoms;

m.      In failing to conduct a complete cardiac workup on MR. PETROSKY;

n.      In delaying in conducting a complete cardiac workup on MR. PETROSKY;

o.      In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk of developing endocarditis and/or infection;

p.      In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk for cardiac deterioration;

q.      In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of further cardiac deterioration;

r.      In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of becoming septic;

s.      In failing to properly evaluate the likelihood that MR. PETROSKY's endocarditis would continue to worsen;

t.      In failing to properly evaluate the likelihood that MR. PETROSKY's cardiac condition would continue to worsen;

u.      In failing to order, schedule, and/or perform appropriate diagnostic tests;

v.      In failing to order, schedule, and/or perform appropriate laboratory tests;

w.      In failing to timely and properly perform diagnostic tests to diagnose MR. PETROSKY's condition;

x.      In failing to properly review and interpret the results of MR. PETROSKY's diagnostic tests;

y.      In failing to timely and adequately diagnose MR. PETROSKY's endocarditis;

z.      In failing to timely and properly evaluate MR. PETROSKY's infectious condition;

aa.   In failing to timely and adequately respond to MR. PETROSKY's deteriorating condition;

bb.   In delaying in treating MR. PETROSKY's cardiac condition; and

cc.   In failing to properly and timely prescribe and administer antibiotics, or other medications, to treat MR. PETROSKY's condition.

59.     As a direct and proximate result of the above actions and omissions of DR. PATTERSON, MR. PETROSKY's condition went undiagnosed and untreated, resulting in permanent injury and damage.

60.     As a direct and proximate result of the negligent acts or omissions of DR. PATTERSON, as alleged above, MR. PETROSKY sustained the following injuries set forth in Paragraph 44, which paragraph is incorporated by reference.

61.     As a result of his injuries, MR. PETROSKY has suffered and will continue to suffer some or all of the damages set forth in Paragraph 45, which paragraph is incorporated by reference.

WHEREFORE, Plaintiffs, JOHN PETROSKY AND STEPHANIE PETROSKY, claim damages against SARAH A. PATTERSON, as Administratrix of the ESTATE OF MICHAEL D. PATTERSON, SR., M.D. in a sum in excess of the applicable arbitration limits and demands a trial by jury.

**COUNT VI – NEGLIGENCE**
**PLAINTIFFS**
**-v-**
**DANIELLE LITZINGER, CRNP**

62.     Plaintiffs incorporate Paragraphs 1 through 61 as if fully set forth herein.

63.     At all times material hereto, CRNP LITZINGER owed a duty to MR. PETROSKY to exercise the skill and care of a reasonable physician.

64.     CRNP LITZINGER had a duty and responsibility to MR. PETROSKY to furnish appropriate and competent medical services.

65.     CRNP LITZINGER failed to exercise or possess that degree of skill, care and education ordinarily exercised or possessed by a certified registered nurse practitioner trained, educated and licensed in medical services.

66.     CRNP LITZINGER, individually and through her agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and technicians, who were involved in the medical treatment described herein, was negligent and careless in some or all of the following particulars:

a.     In failing to properly respond to MR. PETROSKY's tachycardia, hypertension, fevers, and/or weight loss;

b.     In failing to recognize and/or be familiar with the signs and symptoms of endocarditis;

c.     In failing to transfer or send MR. PETROSKY to a medical facility for evaluation and treatment;

d.     In failing to properly manage MR. PETROSKY's infectious condition;

e.     In failing to properly treat MR. PETROSKY's endocarditis;

f.     In failing to properly diagnose MR. PETROSKY's endocarditis;

g.     In failing to properly treat MR. PETROSKY's cardiac condition;

h.     In failing to properly diagnose MR. PETROSKY's cardiac condition;

i.     In failing to recognize that MR. PETROSKY was suffering from endocarditis;

j.     In failing to recognize the severity of MR. PETROSKY's endocarditis;

k.     In failing to recognize the severity of MR. PETROSKY's cardiac condition;

l.     In failing to recognize the severity of MR. PETROSKY's symptoms;

m.     In failing to conduct a complete cardiac workup on MR. PETROSKY;

n.     In delaying in conducting a complete cardiac workup on MR. PETROSKY;

o.     In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk of developing endocarditis and/or infection;

p.      In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk for cardiac deterioration;

q.      In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of further cardiac deterioration;

r.      In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of becoming septic;

s.      In failing to properly evaluate the likelihood that MR. PETROSKY's endocarditis would continue to worsen;

t.      In failing to properly evaluate the likelihood that MR. PETROSKY's cardiac condition would continue to worsen;

u.      In failing to order, schedule, and/or perform appropriate diagnostic tests;

v.      In failing to order, schedule, and/or perform appropriate laboratory tests;

w.      In failing to timely and properly perform diagnostic tests to diagnose MR. PETROSKY's condition;

x.      In failing to properly review and interpret the results of MR. PETROSKY's diagnostic tests;

y.      In failing to timely and adequately diagnose MR. PETROSKY's endocarditis;

z.      In failing to timely and properly evaluate MR. PETROSKY's infectious condition;

aa.     In failing to timely and adequately respond to MR. PETROSKY's deteriorating condition;

bb.     In delaying in treating MR. PETROSKY's cardiac condition; and

cc.     In failing to properly and timely prescribe and administer antibiotics, or other medications, to treat MR. PETROSKY's condition.

67.     As a direct and proximate result of the above actions and omissions of CRNP LITZINGER, MR. PETROSKY's condition went undiagnosed and untreated, resulting in permanent injury and damage.

68.     As a direct and proximate result of the negligent acts or omissions of CRNP LITZINGER, as alleged above, MR. PETROSKY sustained the following injuries set forth in Paragraph 44, which paragraph is incorporated by reference.

69.     As a result of his injuries, MR. PETROSKY has suffered and will continue to suffer some or all of the damages set forth in Paragraph 45, which paragraph is incorporated by reference.

WHEREFORE, Plaintiffs, JOHN PETROSKY AND STEPHANIE PETROSKY, claim damages against DANIELLE LITZINGER, CRNP in a sum in excess of the applicable arbitration limits and demands a trial by jury.

### COUNT VII – NEGLIGENCE
### PLAINTIFFS
### -v-
### DAVID DRUSKIN, PA-C

70.     Plaintiffs incorporate Paragraphs 1 through 69 as if fully set forth herein.

71.     At all times material hereto, PA DRUSKIN owed a duty to MR. PETROSKY to exercise the skill and care of a reasonable physician.

72.     PA DRUSKIN had a duty and responsibility to MR. PETROSKY to furnish appropriate and competent medical services.

73.     PA DRUSKIN failed to exercise or possess that degree of skill, care and education ordinarily exercised or possessed by a physician's assistant trained, educated and licensed in medical services.

74.     PA DRUSKIN, individually and through her agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and technicians, who were involved in the medical treatment described herein, was negligent and careless in some or all of the following particulars:

a. In failing to properly respond to MR. PETROSKY's tachycardia, hypertension, fevers, and/or weight loss;

b. In failing to recognize and/or be familiar with the signs and symptoms of endocarditis;

c. In failing to transfer or send MR. PETROSKY to a medical facility for evaluation and treatment;

d. In failing to properly manage MR. PETROSKY's infectious condition;

e. In failing to properly treat MR. PETROSKY's endocarditis;

f. In failing to properly diagnose MR. PETROSKY's endocarditis;

g. In failing to properly treat MR. PETROSKY's cardiac condition;

h. In failing to properly diagnose MR. PETROSKY's cardiac condition;

i. In failing to recognize that MR. PETROSKY was suffering from endocarditis;

j. In failing to recognize the severity of MR. PETROSKY's endocarditis;

k. In failing to recognize the severity of MR. PETROSKY's cardiac condition;

l. In failing to recognize the severity of MR. PETROSKY's symptoms;

m. In failing to conduct a complete cardiac workup on MR. PETROSKY;

n. In delaying in conducting a complete cardiac workup on MR. PETROSKY;

o. In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk of developing endocarditis and/or infection;

p. In failing to anticipate that MR. PETROSKY's risk factors placed him at an increased risk for cardiac deterioration;

q. In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of further cardiac deterioration;

r. In failing to anticipate that MR. PETROSKY's endocarditis placed him at an increased risk of becoming septic;

s. In failing to properly evaluate the likelihood that MR. PETROSKY's endocarditis would continue to worsen;

t. In failing to properly evaluate the likelihood that MR. PETROSKY's cardiac condition would continue to worsen;

u. In failing to order, schedule, and/or perform appropriate diagnostic tests;

v. In failing to order, schedule, and/or perform appropriate laboratory tests;

w. In failing to timely and properly perform diagnostic tests to diagnose MR. PETROSKY's condition;

x. In failing to properly review and interpret the results of MR. PETROSKY's diagnostic tests;

y. In failing to timely and adequately diagnose MR. PETROSKY's endocarditis;

z. In failing to timely and properly evaluate MR. PETROSKY's infectious condition;

aa. In failing to timely and adequately respond to MR. PETROSKY's deteriorating condition;

bb. In delaying in treating MR. PETROSKY's cardiac condition; and

cc. In failing to properly and timely prescribe and administer antibiotics, or other medications, to treat MR. PETROSKY's condition.

75. As a direct and proximate result of the above actions and omissions of PA DRUSKIN, MR. PETROSKY's condition went undiagnosed and untreated, resulting in permanent injury and damage.

76. As a direct and proximate result of the negligent acts or omissions of PA DRUSKIN, as alleged above, MR. PETROSKY sustained the following injuries set forth in Paragraph 44, which paragraph is incorporated by reference.

77. As a result of his injuries, MR. PETROSKY has suffered and will continue to suffer some or all of the damages set forth in Paragraph 45, which paragraph is incorporated by reference.

WHEREFORE, Plaintiffs, JOHN PETROSKY AND STEPHANIE PETROSKY, claim damages against DAVID DRUSKIN, PA-C in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT VIII – LOSS OF CONSORTIUM
## STEPHANIE PETROSKY
### -v-
## CORIZON HEALTH, INC., CORIZON, INC., SARAH A. PATTERSON, as Administratrix of the ESTATE OF MICHAEL D. PATTERSON, SR., M.D., DANIELLE LITZINGER, CRNP, and DAVID DRUSKIN, PA-C

78.     Plaintiffs incorporate Paragraphs 1 through 77 as if fully set forth herein.

79.     Plaintiff MRS. PETROSKY is now, and was at all times material hereto, married to Plaintiff MR. PETROSKY.

80.     As a direct and proximate result of the previously stated negligence of all Defendants, MRS. PETROSKY has suffered and/or will suffer the following damages:

  a.     Loss of society;

  b.     Loss of companionship;

  c.     Loss of consortium;

  d.     Loss of services; and

  e.     She has been, and in the future, may be required to expend substantial sums of money for her husband's medical expenses.

WHEREFORE, Plaintiff, STEPHANIE PETROSKY, claims damages against Corizon Health, Inc., Corizon, Inc., Sarah A. Patterson, as Administratrix of the Estate of Michael D. Patterson, Sr., M.D., Danielle Litzinger, CRNP, and David Druskin, PA-C, in a sum in excess of the applicable arbitration limits and demand a trial by jury.

Respectfully submitted,

OGG, MURPHY & PERKOSKY, PC

Michael A. Murphy, Esquire
John D. Perkosky, Esquire
Benjamin J. Gobel, Esquire
Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN PETROSKY and STEPHANIE     :    No.: 17-cv-146 MPK
PETROSKY,                                :
                                       :
           Plaintiffs,         :
                                       :
-v-                                         :
                                        :
ALLEGHENY COUNTY; et al.,        :
                                        :
           Defendants.       :

**CERTIFICATE OF MERIT AS TO DEFENDANT ALLEGHENY COUNTY**

I, Benjamin J. Gobel, Esquire, hereby certify:

☒      an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☒      the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐      expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date:    June 9, 2017

                                _____
                                      Benjamin J. Gobel, Esquire

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN PETROSKY and STEPHANIE  : No.: 17-cv-146 MPK
PETROSKY,   :
         :
    Plaintiffs,   :
         :
-v-        :
         :
ALLEGHENY COUNTY; et al.,  :
         :
    Defendants.  :

### CERTIFICATE OF MERIT AS TO DEFENDANT ORLANDO HARPER, Individually

I, Benjamin J. Gobel, Esquire, hereby certify:

 ☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

 ☒ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

 ☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: June 9, 2017      _____
              Benjamin J. Gobel, Esquire

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN PETROSKY and STEPHANIE :  No.:  17-cv-146 MPK
PETROSKY, :
 :
    Plaintiffs, :
 :
-v- :
 :
ALLEGHENY COUNTY; et al., :
 :
    Defendants. :

### CERTIFICATE OF MERIT AS TO DEFENDANT CORIZON HEALTH, INC.

I, Benjamin J. Gobel, Esquire, hereby certify:

 ☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

 ☒ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

 ☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: June 9, 2017

       _____

       Benjamin J. Gobel, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN PETROSKY and STEPHANIE PETROSKY, | : | No.:  17-cv-146 MPK |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -v- | : | |
| | : | |
| ALLEGHENY COUNTY; et al., | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF MERIT AS TO DEFENDANT CORIZON, INC.**

I, Benjamin J. Gobel, Esquire, hereby certify:

☒   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☒   the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date:   June 9, 2017

_____
Benjamin J. Gobel, Esquire

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN PETROSKY and STEPHANIE :   No.: 17-cv-146 MPK
PETROSKY, :
                                 :
              Plaintiffs, :
                                 :
-v- :
                                   :
ALLEGHENY COUNTY; et al., :
                                   :
              Defendants. :

**CERTIFICATE OF MERIT AS TO DEFENDANT SARAH A. PATTERSON, as Administratrix of
the ESTATE OF MICHAEL D. PATTERSON, SR., M.D.**

I, Benjamin J. Gobel, Esquire, hereby certify:

    [X] an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

    [X] the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

    [ ] expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date:   June 9, 2017                          _____
                                        Benjamin J. Gobel, Esquire

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN PETROSKY and STEPHANIE     :     No.: 17-cv-146 MPK
PETROSKY,                          :
                                :
          Plaintiffs,            :
                                :
-v-                                    :
                                :
ALLEGHENY COUNTY; et al.,         :
                                :
          Defendants.          :

### <u>CERTIFICATE OF MERIT AS TO DEFENDANT DANIELLE LITZINGER, CRNP</u>

I, Benjamin J. Gobel, Esquire, hereby certify:

     an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

     the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐      expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date:    June 9, 2017                                                

_____
Benjamin J. Gobel, Esquire

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN PETROSKY and STEPHANIE       :       No.:  17-cv-146 MPK
PETROSKY,                         :
                                  :
            Plaintiffs,           :
                                  :
-v-                               :
                                  :
ALLEGHENY COUNTY; et al.,         :
                                  :
            Defendants.           :

## CERTIFICATE OF MERIT AS TO DEFENDANT DAVID DRUSKIN, PA-C

I, Benjamin J. Gobel, Esquire, hereby certify:

☒       an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☒       the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Amended Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐       expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date:   June 9, 2017

_____
Benjamin J. Gobel, Esquire

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within First Amended Complaint in Civil Action and Certificates of Merit to Complaint was served on this 9th day of June, 2017, via U.S. First-Class Mail, postage prepaid, on the following parties of record:

Lee Dellecker, Esquire
Assistant County Solicitor
Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
[Counsel for Defendants:  Allegheny County and Warden Orlando Harper]

Kathryn M. Kenyon, Esquire
Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222
[Counsel for Defendants:  Corizon, Inc., Corizon Health, Inc. and Sarah A. Patterson, as the Administratrix of the Estate of Michael D. Patterson, Sr., M.D., David Druskin, PA-C and Danielle Litzinger, CRNP]

OGG, MURPHY & PERKOSKY, PC

_____
BENJAMIN J. GOBEL, ESQUIRE