IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN PETROSKY and STEPHANIE )
PETROSKY, )
    )
    ) Civil Action No. 17-146
   Plaintiffs, ) Chief Magistrate Judge Maureen P. Kelly
    )
   v. )
    )
ALLEGHENY COUNTY, ALLEGHENY ) Re: ECF No. 19
COUNTY JAIL, ORLANDO HARPER, )
*Individually and in his capacity as Warden*, )
CORIZON HEALTH, INC. CORIZON, INC., )
SARAH A. PATTERSON, *as Administratrix* )
*of the ESTATE OF MICHAEL D.* )
*PATTERSON, SR., M.D.*, DANIELLE )
LITZINGER, *CRNP* and DAVID DRUSKIN, )
*PA-C* )
    )
   Defendants. )

**OPINION**

John and Stephanie Petrosky (collectively, "Plaintiffs") bring this action pursuant to 42

U.S.C. § 1983 against Allegheny County and Orlando Harper ("Warden Harper") (collectively,

"the County Defendants") as the result of serious injuries allegedly caused by their deliberate

indifference to Mr. Petrosky's serious medical condition, endocarditis. Plaintiffs contend that

the County Defendants violated constitutional provisions by not providing adequate medical care

to Mr. Petrosky when he was a pretrial detainee at the Allegheny County Jail ("ACJ") from

March 6, 2014, to September 14, 2014. Plaintiffs also bring state law negligence claims against

Corizon Health, Inc., Corizon Inc., Sarah A. Patterson, as administratrix of the Estate of Dr.

Michael D. Patterson ("Dr. Patterson"), Danielle Litzinger, CRNP ("CRNP Litzinger"), and

David Druskin, PA-C ("PA-C Druskin") (collectively, "the Corizon Defendants"). Specifically,

Plaintiffs allege that the Corizon Defendants provided negligent medical care to Mr. Petrosky while he was incarcerated in ACJ. Mrs. Petrosky also brings a loss of consortium claim against the Corizon Defendants.

Currently pending before the Court is the County Defendants' Rule 12(b)(6) Motion to Dismiss Counts I and II. ECF No. 19. For the following reasons, the Motion to Dismiss will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

In the operative Amended Complaint, Plaintiffs make the following detailed factual allegations. Mr. Petrosky, age 43, arrived at ACJ on March 6, 2014. ECF No. 14 ¶ 1. Upon arrival, he complained of chest pain at the infirmary. Id. The ACJ infirmary was operated and staffed by Corizon Health and Corizon Inc. Id. ¶ 10. On March 7, 2014, the intake-and-receiving screening of Mr. Petrosky showed that his body temperature was 100.1 degrees Fahrenheit, his pulse was 111 beats per minute, and his blood pressure was 152/86. Id. ¶ 11. Repeated evaluations over the next two months showed Mr. Petrosky to be febrile, tachycardic and hypertensive. Id.

On May 15, 2014, a medical evaluation noted that Mr. Petrosky's body temperature was 102.2 degrees Fahrenheit and his pulse at 114 beats per minute. Id. ¶ 12. Despite these continued findings and a worsening physical condition, a complete physical assessment, evaluation, and work-up was not performed. Id.

During a June 27, 2014, medical examination, it was noted that Mr. Petrosky had lost twenty-nine pounds since his incarceration. Id. ¶ 13. On that date, his body temperature was 103.5 degrees Fahrenheit, his pulse was 140 beats per minute, and his blood pressure was

2

170/40. Id. Again, despite a worsening physical condition, a complete physical assessment, evaluation, and work-up was not completed. Id.

From June 27, 2014, to September 14, 2014, Corizon employees CRNP Litzinger and PA-C Druskin repeatedly evaluated Mr. Petrosky and entered numerous orders. Id. ¶ 14. However, Mr. Petrosky did not receive a complete physical assessment, evaluation, and work-up. Id.

At some point between the date of his incarceration at ACJ on March 6, 2014, and September 14, 2014, Mr. Petrosky lost the ability to walk. Id. ¶ 15. He also developed profuse night sweats. Id. He submitted numerous requests to the ACJ infirmary for medical assistance and evaluation that were ignored. Id.

On September 14, 2014, immediately upon transfer to the Westmoreland County Jail, Mr. Petrosky's serious medical condition was recognized. Id. ¶ 16. He was promptly transported to Westmoreland Regional Hospital. Id. He presented with tachycardia, shortness of breath and complaints of substernal chest pain. Id. He was found to be in congestive heart failure and blood cultures were positive for streptococci, gram negative. Id. A transesophageal echocardiogram showed multiple vegetations of the tricuspid valve with severe aortic insufficiency. Id. Vegetation of the mitral valve was also seen. Id.

Due to the seriousness of Mr. Petrosky's cardiac condition, he was transferred from Westmoreland Regional Hospital to Allegheny General Hospital ("AGH") where he was diagnosed with endocarditis, a life-threatening bacterial infection affecting his heart and its valves. Id. At AGH, Mr. Petrosky underwent aortic and mitral valve replacement surgery and repair of an aortic pseudoaneurysm. Id. ¶ 17.

In January of 2015, due to damage to his spleen caused by the delay in treatment, Mr. Petrosky had his spleen removed. Id. ¶ 18.

In May 2015, Mr. Petrosky's endocarditis recurred. Id. ¶ 19. He required a repeat sternotomy in which aortic and mitral valves were replaced with mechanical valves. Id. Further, between his surgeries, Mr. Petrosky suffered profound respiratory failure which required extracorporeal membrane oxygenation, tube feeding and a tracheostomy. Id. As a result of these complications, Mr. Petrosky lost all of his toes. Id.

## B. Procedural History

Plaintiffs initiated this action by filing their Complaint in the Court of Common Pleas of Allegheny County on January 4, 2017. Id. at 1. Therein, Plaintiffs raised twelve counts: (1) Count I: Section 1983 claim against Allegheny County; (2) Count II: Negligence against Allegheny County; (3) Count III: Section 1983 claim against ACJ; (4) Count IV: Negligence against ACJ; (5) Count V: Section 1983 claim against Warden Harper; (6) Count VI: Negligence against Warden Harper; (7) Count VII: Negligence against Corizon Health, Inc.; (8) Count VIII: Negligence against Corizon, Inc.; (9) Count IX: Negligence against Sarah A. Patterson, as administratrix of the Estate of Dr. Patterson; (10) Count X: Negligence against CRNP Litzinger; (11) Count XI: Negligence against PA-C Druskin; and (12) Count XII: Loss of Consortium against all Defendants.

The County Defendants removed Plaintiffs' action to this Court on February 1, 2017. ECF No. 1. On February 6, 2017, the Corizon Defendants filed an Answer and Affirmative Defenses. ECF No. 3. On February 22, 2017, the County Defendants filed a Motion to Dismiss and Brief in Support. ECF Nos. 4, 5. On March 16, 2017, Plaintiffs filed a Brief in Opposition. ECF No. 11. Therein, Plaintiffs withdrew Count II, Count III, Count IV and Count VI. Id. at 2

4

n.1. On March 23, 2017, the County Defendants filed a Reply to Plaintiffs' Brief in Opposition. ECF No. 12.

On May 10, 2017, this Court granted the Motion to Dismiss as to Count I and Count V without prejudice to Plaintiffs' ability to file, on or before June 9, 2017, an Amended Complaint curing the defects identified in the Opinion. ECF No. 13. This Court further granted the Motion to Dismiss prejudice as to Count XII against Allegheny County, Allegheny County Jail and Orlando Harper and as to all claims brought against Orlando Harper in his official capacity. Id.

On June 9, 2017, Plaintiff filed the operative Amended Complaint. ECF No. 14. Therein, Plaintiffs raised eight counts: (1) Count I: Section 1983 claim against Allegheny County; (2) Count II: Section 1983 claim against Warden Harper; (3) Count III: Negligence against Corizon Health, Inc.; (4) Count IV: Negligence against Corizon, Inc.; (5) Count V: Negligence against Dr. Patterson; (6) Count X: Negligence against CRNP Litzinger; (7) Count VII: Negligence against PA-C Druskin; and (8) Count VIII: Loss of Consortium against the Corizon Defendants.

On June 16, 2017, the Corizon Defendants filed an Answer. ECF No. 15. On July 7, 2017, the County Defendants filed the instant Motion to Dismiss and a Brief in support. ECF Nos. 19-20. On July 28, 2017, Plaintiff filed a Brief in opposition. ECF No. 23. On August 11, 2017, the County Defendants filed a Reply Brief. ECF No. 24. The instant Motion to Dismiss is ripe for consideration. The Motion to Dismiss relates only to Counts I and II.

## II.    STANDARD OF REVIEW

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court

5

must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

## III.   DISCUSSION

### A.   Count I: Section 1983 (Allegheny County)

At Count I of their Complaint, Plaintiffs bring a Section 1983 claim of Allegheny County's deliberate indifference to Mr. Petrosky's serious medical needs based solely on a violation of Eighth Amendment standards arising under the Fourteenth Amendment.[1] ECF No. 14 ¶¶ 20-28; ECF No. 23 at 8-15.

In order to succeed on a Section 1983 claim, a claimant must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

---

[1] Mr. Petrosky was a pretrial detainee at ACJ. ECF No. 23 at 8 n.2. "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (internal citation omitted). The United States Court of Appeals for the Third Circuit applies the same standard to claims for inadequate prison medical care brought under the Eighth and Fourteenth Amendments. Id. at 582.

Prisoners have a constitutional right to receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A prisoner can establish a violation of his Fourteenth Amendment right to adequate medical care by showing (1) a serious medical need and (2) prison officials' acts or omissions indicating deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a prisoner's medical needs includes "where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)), and when medical care is intentionally not provided even when the need for it is known. Id. (citing Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985)).

The County Defendants argue that Allegheny County cannot be held liable on this claim because Plaintiffs have failed to allege an Allegheny County policy or custom that denied Mr. Petrosky's appropriate medical assessment and treatment. ECF No. 20 at 13-16. Instead, they argue, Allegheny County provided Mr. Petrosky with medical care through the medical professional of Corizon. Id. at 14.

Indeed, a municipality may only be liable for its own illegal acts or if a plaintiff identifies a municipal "policy" or "custom" that caused a constitutional violation. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Such policies or customs arise in the following ways:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of

7

constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, No. 01-3449, 2003 U.S. App. LEXIS 2152 (3d Cir. 2003) (citations and quotation marks omitted).

In opposing the previous Motion to Dismiss as to Count I, Plaintiffs cited Mr. Petrosky's rapid weight loss, eventual inability to walk and repeated requests for medical care, and argued that they "should be given the opportunity to prove that Allegheny County allowed a policy to exist where medical care of such obviously ill patients was not reviewed, and requests for care not addressed." ECF No. 11 at 16. This Court found that, even assuming the truth of the cited allegations, the allegations were insufficient to establish a plausible claim that that a policy or custom existed that deprived Mr. Petrosky of his constitutional rights. ECF No. 13 at 7. Nonetheless, the Court permitted Plaintiffs to file an Amended Complaint specifically identifying the policies and/or customs upon which Plaintiffs based their deliberate indifference claim in Count I. Id. at 8.

In opposing the instant Motion to Dismiss as to Count I, Plaintiffs rely on four facts: (1) Mr. Petrosky's loss of the ability to walk; (2) Mr. Petrosky's loss of almost 30 pounds in less than four months; (3) Mr. Petrosky's repeated requests for medical care; and (4) the immediate recognition by the Westmoreland County Jail of Mr. Petrosky's condition. ECF No. 23 at 12-13. As the County Defendants point out, ECF No. 24 at 2, none of these facts are new to the Amended Complaint. Indeed, in their Amended Complaint, Plaintiffs do not identify any additional facts as to Count I.[2] Accordingly, the allegations in the Amended Complaint failed to

---

[2] Although Plaintiffs do not specifically rely on the following allegations to oppose the instant Motion to Dismiss, the Court notes that Plaintiffs did add allegations to the Amended Complaint of eight instances in which Allegheny County "fostered and created a policy, custom and/or practice" of deliberate indifference. ECF No. 14 ¶ 27. However, these allegations are not factual in nature, but are merely conclusory, and cannot form the basis of a claim.

cure the deficiencies identified in this Court's previous Opinion. Thus, the Motion to Dismiss will be granted as to Count I.

## B. Count II: Section 1983 (Warden Harper)

At Count II, Plaintiffs raise a Section 1983 claim of supervisor liability on the part of Warden Harper, in his individual capacity, for deliberate indifference to Mr. Petrosky's serious medical needs. ECF No. 14 ¶¶ 29-37; ECF No. 23 at 15-19.

Under Section 1983, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted), rev'd sub nom on other grounds by Taylor v. Barkes, 135 S. Ct. 2042 (2015). A supervisor may also be liable if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Id. (citations and quotation marks omitted).

In support of the Motion to Dismiss, the County Defendants argue that Plaintiffs have failed to allege sufficient facts in the Amended Complaint to support a claim of supervisory liability on the part of Warden Harper. ECF No. 20 at 10-11. In opposition to this Motion to Dismiss, as they did in opposition to the previous Motion to Dismiss, ECF No. 11 at 14, Plaintiffs assert that Warden Harper is liable because he "was deliberately indifferent to whether the medical needs of Petrosky, or other obviously ill inmates, were being addressed by the medical provider." ECF No. 23 at 19. However, as this Court found in its opinion addressing the previous Motion to Dismiss, Plaintiffs' allegations are not sufficient for the Court to infer that Warden Harper was deliberately indifferent to Mr. Petrosky's medical needs.

9

Although Plaintiffs now allege that Warden Harper "knew that Mr. Petrosky was seriously ill, in need of medical attention, and that his constitutional rights to adequate medical care were being violated;" Plaintiffs further allege that this "knowledge" on the part of Warden Harper came "[t]hrough [Mr. Petrosky's] rapid weight loss while at ACJ, his development of an inability to walk and repeatedly [sic] requests for care." ECF No. 14 ¶ 31. While part of this allegation appears to implicate Warden Harper's direct knowledge of violations of Mr. Petrosky's rights, the remainder of the allegation reveals that the factual basis for Warden Harper's knowledge is based solely on his position as warden. As the County Defendants point out, Plaintiff are merely asserting respondeat superior liability, which is not cognizable in a Section 1983 action. ECF No. 24 at 4 (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Because this sole new allegation[3] does not cure the deficiencies identified in this Court's previous Opinion, the Motion to Dismiss as to Count II will be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss, ECF No. 19, will be granted. The federal claims at Counts I and II will be dismissed and the County Defendants will be dismissed from the case. Further, because the remaining claims in this case are state law claims and the Court lacks diversity jurisdiction over them, the case will be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) and remanded to the Court of Common Pleas of Allegheny County for all further proceedings.

---

[3]    In additional to the new allegation discussed *infra*, Plaintiffs have also added to Count II their Amended Complaint a list of policies similar to those included at Paragraph 27 in Count I. ECF No. 14 ¶ 36. As noted *supra*, these allegations are not factual in nature, but are merely conclusory, and cannot form the basis of a claim.

## **ORDER**

AND NOW, this 15th day of December, 2017, IT IS HEREBY ORDERED that the Motion to Dismiss, ECF No. 19, is GRANTED. Count I and Count II are dismissed with prejudice.

IT IS FURTHERED ORDERED that Defendants Allegheny County and Orlando Harper are dismissed from the case.

IT IS FURTHER ORDERED that this case is dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3). The Clerk of Court shall remand this case to the Court of Common Pleas of Allegheny County.

BY THE COURT:

_Maureen P. Kelly_

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record via CM/ECF

11